I will call the case of the estate of Fontana v. Diapoli. have two questions related to that. Your friend across the aisle says it is not moot because you can redress the injury that we have. You won't be able to use the documents if we find that discovery was improper. First of all, do you agree or disagree with that? If you disagree with it, why? Second, on another tangent, I want to ask you, if this is not a final order, what else would have to happen before it is final for purposes of appeal? I'm going to do the second question first, Your Honor. I don't want to snatch defeat from the jaws of victory, but I do want to talk about Judge Luck's point. The Ritson argument that is being made here, and it's Ritson and Bullard, so we have unanimous Supreme Court decisions, one authored by the Chief Justice and one authored by Justice Ginsburg. In those cases, these are not Chapter 15 cases, they're more international in scope. What the appellants are arguing is that regular discovery orders that happen every day in bankruptcy court for domestic bankruptcy cases would have the same analysis of, is that request being made in further to something that's contemplated? That's Rule 2004. This court in International Horizons in 1982, under the prior rule, under Rule 2005, which was the same broad discovery that's granted to bankruptcy trustees, this court said, that's a discovery order. If the person who has asked for the documents refuses to produce them and gets held in contempt, that's your pathway to the appellate process. If the person who's holding it is holding your documents and they won't go to jail, they won't be held in contempt, that's the Perlman Doctrine. That's what International Horizons was about. And that was in our brief in response to the jurisdictional question. So you're saying, it doesn't matter that it's not a final order, they can still get before the court, but they just have to risk contempt. And that's what Chief Justice Roberts said in both. The last four sections says that if something egregious happens... Right. But let me ask it to you this way. Even considering that, what has to happen for this order to become, for there to be a final order in this whereby this discovery ruling as a part of that final order would be appealable? Without going through the contempt route. There is no path in general civil litigation for a discovery order to have a direct path of finality. Counsel, that's simply not true. It's not. There's a final judgment in every civil litigation. And that's my question. That is exactly Judge Rosenbaum's question. There doesn't appear to be a light at the end of this tunnel. Even in the worst civil litigation that I have seen, there is a light at the end of the tunnel. It's a stipulated dismissal, which could be appealed. It is a final judgment which is entered against somebody. There's somehow to get to an appellate court. Agreed. How do we get to an appellate court for a final judgment? In a domestic Chapter 7, there is no final order in the Chapter 7 where you will review a subpoena issued under Rule 2004. That's what International Horizons took up. And in fact, after Ritson and Bullard were decided, if you look at those cases... There is a report that's filed, and that was the analogy they drew. If you look at their reply, they say this is different. Chapter 15 is different than Chapter 7. I submit they run exactly the same. Federal Rule of Bankruptcy Procedure 5009 says you close a 7 the same way you close a 15. Now, in experience, when a Chapter 7 is closed, there isn't an appeal with respect to a Rule 2004 examination that happened five years earlier. Let me back up. And when you close a bankruptcy, there is some order which says we accept a plan, we restructure, we do something. Something is issued, right? In a Chapter 7 case run under 5009A, a Chapter 7 trustee would file a report. If there is no objection to the report, the case is deemed to be fully administered. That's it. And it can be appealed. If somebody thinks that it's not fully administered. And arguably, I guess they could argue about a Rule 2004 examination subpoena that was issued some day back in the day. In other words, the light is long, but there's some light. That is true. I want to go back to Judge Rosenbaum's question, which is what is that here? What's the equivalent of that here? Exactly the same. 5009C, same Federal Rule of Bankruptcy Procedure. A is for 7s. C is for 15s. Chapter 15, foreign representative files a report and says, I believe it's fully administered. If nobody objects, the case is deemed fully administered. I have to say that seems inconsistent with Ritson where we're to look at not the scope of the entire bankruptcy, but the discrete proceeding. So the discrete proceeding here seems to be in contemplation of some of getting information about an asset under the freeze order. That's essentially what you say, right? That's correct. Okay. So I get that if there was a motion to freeze a particular asset and a discovery was sought, an execution of that, that to me is a clear-cut case where the discovery order would not be final, again, assuming no privilege or anything like that. But in a case where we're kind of hoping and kind of feeling and kind of maybe it will happen, but we don't know and we're fishing to see, that does not seem like another sequence in the discrete process, but an end itself in a discrete process. The analogy there would mean that every Chapter 7 bankruptcy case and Chapter 11 cases where Rule 2004 examinations are taken every day to figure out does the debtor have assets that have not been disclosed. It may lead to something, which would then lead to a motion for turnover, but it may lead nowhere. Like you go to a grand jury and you ask for documents. It may not lead to a charge. By the way, the Supreme Court and grand jury said, you don't get a regular final order. But an examination of a debtor is leading to somewhere. I mean, the purpose is to list the assets. In every one of these cases, there generally aren't any. They'll issue a report saying there's nothing here, guys. Discharge, there's no objection from a creditor. It's discharge, right? Correct. And by the way, on the discharge, I want to make sure that we understand a Chapter 7 discharge doesn't end the Chapter 7 case. That's really 60 days after the original filing of the bankruptcy case. That's not the end of the game. The end is the report. But I agree with you. The purpose of a Rule 2004, whether in a Chapter 15 or in a domestic case, is to hopefully find something you can levy on or grab or turnover or do something. It is always in contemplation of something else. You may drill dry holes, but at least you're trying to get towards something. And this Court and every other circuit before Ritson and Bullard held that Rule 2004 examination orders are not appealable. They are appealable under all of the regular exceptions to finality, contempt, Pearlman. The counsel, let's assume I accept everything you're saying here. The context still matters. If this was a Chapter 15 proceeding where it was essentially like a 1782 where there was simply one request, the request is, we need a particular document that resides in the United States or a deposition of a witness who resides in the United States for our foreign bankruptcy. And that's the only thing it's about. You would agree that that order would be final or you still think you need to file the report to get to finality in that case? I do not believe that order is final. And the reason I don't believe that order is final, the only case that is held that it would be final is Barnett. And since it's the only case, I applied my legal realism in looking at it. If you look at Barnett, the way it got to the Second Circuit was a very strange animal. The order that gave the discovery or order of discovery wasn't appealed. The Second Circuit decided that they wanted to hear the appeal because the first time somebody raised jurisdiction was in their initial brief. So it didn't come with any briefing from the parties as to whether or not the analogy to 1782 makes any sense. And the context does matter. Applying jurisdictional principles and finality principles by analogy is something that is not particularly common. So there could be an argument if you wanted to say we're going to carve out bankruptcy cases under Chapter 15 that are solely requesting documents for use in the foreign main proceeding. The problem with that point would be where's the end of that? And Justice Ginsburg in Ritzen at the end talks about this and said when you're dealing with finality, because we have these safety valves, we have contempt, we have Perlman doctrine, we have collateral order doctrine, we have other ways to get to the point. And by the way, you can take leave to appeal. District Court can always grant leave to appeal. If something crazy happened at the bankruptcy court, they would apply the fact and say, look, this went off the rails. I'm going to take jurisdiction over this interlocutory order, enter an order, and that's appealable to the Court of Appeals. But going back to it, in that circumstance, in a Chapter 7 case where a domestic bankruptcy trustee issues a 2004, for the sole purpose of deciding whether the bankruptcy trustee is going to create a foreign case. Remember, Chapter 15 is enacted in multiple countries. That was the point. It's the UNSATROL model law. So we're not the only ones. In fact, we adopted what the Europeans created. So if a Chapter 7 trustee here issues a rule 2004 in which this court in International Horizons said that's not a final order, and every other circuit has said that's not a final order, and after Bullard, there's one case called Bestwall, which also said discovery orders in 2004 are not final. If that Chapter 7 trustee is seeking information in the United States for money flows that came through the United States for purposes of opening a bankruptcy in Switzerland or a bankruptcy in Brazil, would we say that fits the analogy of 1782? Clearly doesn't. Counsel, I want you to get to Judge Rosenbaum's other question on mootness. And I think what her question is, is there a way to redress this? Can we not order, or have we not in the past said that we can order the destruction of the trustee or the party to destroy the documents or to return those documents as a remedy for the improper turning over of documents? And does that not address the mootness issue? I haven't seen that yet. I don't see why the bankruptcy judge who has jurisdiction over the foreign representative, who is the one who sought the documents, the concern I would have would be like any other post-order conduct. These documents were reviewed. They were sent to our co-counsel in Brazil. They may have been used. Remember, the first round of subpoenas yielded documents that led to this freeze order. So one of the purposes of this Chapter 15 was to aid, and it did the job. These freeze orders arose from some of the information that was found. I don't know if there's a practical relief to pull back documents that have been used in another proceeding or documents that we've already filed. Anything in the United States, of course, the judge could tell us, destroy it, throw it away, I'm sealing all the court records. I don't know the answer to whether or not the bankruptcy court here . . . So there is some relief that could be offered. There is some relief that could be offered. I mean, we have never taken the position, and what Mr. Dervish was pointing to, is our firm is one of the main filers of Chapter 15s in the United States. And in those cases, we have never taken the position that the bankruptcy judge doesn't have the power to tell us to do anything that the judge believes that he can do. And under 105, which is the All Writs Provision of the Bankruptcy Code, they have very strong powers to do what they think is best. I want to get back to this Barnett issue, since it's the only decision that supports the finality. Barnett didn't review the discovery order. It only reviewed the recognition order. Now, in the Barnett case, there were two orders. There was a recognition order, and then there was a separate discovery order. And they only appealed the first order and not the second. And the Second Circuit went in a very tortured way to decide that they could review the first order, even though the second order hadn't been appealed. And the reason I point that out is that this court, in an earlier iteration of this case, and it's highlighted in our briefs, the earlier set of subpoenas, a jurisdictional question was issued by this court, and this court answered. Now, the argument they've made, they didn't argue Barnett. It existed, but they didn't argue it. And they argued that was really a Perlman Doctrine case. But this court, in response to that jurisdictional question, said, this is not a final order, which is in keeping with International Horizons and every other circuit that looked at it. Now, clearly, it's before Ritson. It's before Bullard. I will point out, though, there's no indication in Bullard or in Ritson that discovery orders are considered to be preliminary proceedings or preliminary discrete parts of a proceeding. Just like discovery, as we understand it sort of in a colloquial way, the purpose of discovery is to lead to something. The problem is this isn't colloquial. I mean, that's really the issue. I agree with you in the colloquial sense. Discovery is not because it's in the aid of something. But this is really not in the aid of anything, at least that's pending right now. It's on a hope and a prayer. But that is in contemplation of something, just like a domestic case would be. And please understand, I know it's the parade of horribles argument that everybody makes. But in this case alone, Mr. DeVish is quite correct. Lots of subpoenas are issued when you're trying to find out where the diverted assets went. My time is up. I think somebody is trying to hand you something from the audience. There's somebody. I got the nod for the re-hearing, for the rebuttal. The Mary Grove decision in 2015 didn't discuss any of these issues. It just treated the subpoena, which was procedurally different. The order just treated it as a single judicial unit. General rule is discovery is not appealable. It's not final order. And I think the argument that somehow we're saying all discovery orders in 2004 now would be discoverable, and that's our argument, I don't think that's correct at all. Chapter 15. What's the limiting principle? Well, it's a chapter 15, it's ancillary. And again, it has to go through the written analysis. It has to be separate from the rest of the case. It has to be before and apart proceedings regarding the creditor's claims. The analogy seems pretty strong. I mean, from chapter 7, what your co-counsel was describing. There's an investigation that's done. You come in, you talk about your assets. There may be some subpoenas or something to banks to put it out there just to satisfy the trustee. No one objects, and then the thing just sort of ends. But ultimately, chapter 7 will result in a discharge order and a final report. This will, too, at some point. Well, that's another point I want to make. I mean, I have kids. They may see it. In 1517D, it provides, it says that a case under this chapter may be closed in the manner prescribed by another section of the code. It's not mandatory. So, you know, there may be some administrative requirements that would result in closings of chapter 15, but the trustees in Brazil may or may not decide to close it. They may abandon it. They may wait for another group of trustees to come in and see if they can maybe do something with the Fontana Cipriani family. There's no final judgment. There's no discharge. There's no reorganization. But the argument about we're asking for all subpoenas, all discovery to be subject to appeals, it's not what we're asking for or what we're suggesting. The Supreme Court has, in Ritson, it didn't say we're just going to deal with stay issues or with reorganizations. It basically said, it very clearly said, in bankruptcies, this is the analysis you apply. So if a subpoena in a 2004 satisfies the requirements and the analysis under Ritson, then it's a final order and you better appeal it within 14 days. Because if you don't, what will happen to you is what happened to the creditor in Ritson. They didn't appeal the denial of the stay until the confirmation order. And the circuit court, affirmed by the Supreme Court, said your appeal was untimely. It should have been done within the 14 days. It's a short fuse in bankruptcy. There always exists in Chapter 15 the possibility of some other proceeding being instituted here, other relief being sought under other sections of Chapter 15. But I don't think that's sufficient to defer a finality of a significant order denying this protection until something happens. I have no other comments. Any other questions? I don't think so. But thank you for your presentation. This was very helpful. Thank you. We have the case.